LEON C. COBLENS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MAURICE U. CAHN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 50168, 50169. Promulgated December 6, 1932.

*Bernard R. Youngman, Esq.*, and *Eli Frank, Jr., Esq.*, for the petitioners.

*Nathan Gammon, Esq.*, and *Vernon F. Weekley, Esq.*, for the respondent.

OPINION.

SMITH: These proceedings, consolidated for hearing, are for the redetermination of deficiencies in income tax for 1928 of $16,664.28 in the case of Leon C. Coblens, and of $12,836.49 in the case of Maurice U. Cahn. The question presented for decision is whether the petitioners sustained statutory net losses in 1927 which may be deducted from gross income in the determination of tax liabilities for the year 1928.

The petitioners were the owners of all of the outstanding stock of a department store corporation known as Cahn-Coblens Company, which for many years prior to 1923 had conducted a department store in Baltimore, Maryland. In 1923 the Cahn-Coblens Company was consolidated with Bernheimer Brothers, a partnership, which also conducted a department store in Baltimore, the new corporation being known as " The Bernheimer Leader Stores, Inc."

As a result of the reorganization in 1923, the petitioners by exchange of their shares of stock in Cahn-Coblens Company for stock of the new corporation, which exchange was nontaxable under the Federal income tax laws, acquired 8,000 shares and 7,600 shares, respectively, of no par common stock of The Bernheimer Leader Stores, Inc. Pursuant to an agreement with the petitioners to have an investment in the new corporation approximately equal to the investment of Bernheimer Brothers therein, Coblens and Cahn purchased from the corporation, at $50 per share, 2,000 shares and 2,360 shares, respectively, additional of the no par common stock. Coblens became president of the new corporation and Cahn vice president, and remained as such until some time in 1927, when each sold his holdings of common stock to the May Department Stores Company, which corporation operated a chain of department stores in different cities. Upon the sale of their holdings in 1927, Coblens sustained a loss of $91,281.35 and Cahn a loss of $114,948.83.

During the years 1927 and 1928 the petitioners were, and had been for many years prior thereto, large speculators in stocks, buying some outright and carrying others on margin. They purchased and sold shares for their own account. Purchases and sales were numerous and each considered the trading in stocks his principal business.

Shortly after the organization of The Bernheimer Leader Stores, Inc., the petitioners endeavored to sell their holdings of stock in that company. Cahn agreed with Coblens not to press his stock

for sale until Coblens had sold enough to pay off certain debts. Coblens listed his shares of stock with a New York brokerage concern for sale at $50 per share, and in 1924 succeeded in selling 200 shares at that price. He sold a few additional shares at slightly less than $50 per share, but both petitioners retained most of their stock until they had an opportunity to sell their entire holdings to the May Department Stores Company in 1927, at the losses above indicated.

Upon the sale of their shares in 1927, Coblens was employed by the May Department Stores Company and served in an advisory capacity throughout the balance of the year 1927 and in 1928, but devoted little time to the affairs of the company. Cahn had no business after the sale of his shares in 1927 other than that of buying and selling securities for his own account.

In their income tax returns for 1927, the petitioners Coblens and Cahn reported net losses for the year of $72,141.45 and $52,319.23, respectively, which amounts include the losses on the sale of the stock of The Bernheimer Leader Stores, Inc. In their income tax returns for 1928, the petitioners brought forward the net losses shown in their 1927 returns and claimed their deduction from gross income in the determination of net income for 1928. The respondent has disallowed these deductions in the determination of the deficiencies herein, upon the ground that the losses on the sale of The Bernheimer Leader Stores, Inc., stock were not incurred in a trade or business regularly carried on by the petitioners.

A net loss, to be deductible from the gross income of a succeeding year under the provisions of the Revenue Act of 1926, must be " attributable to the operation of a trade or business regularly carried on by the taxpayer." Sec. 206. A net loss sustained from the operation of a trade or business in 1926 or 1927 may be deducted from the gross income of 1928 under the provisions of section 117(e) of the Revenue Act of 1928.

The petitioners contend that the losses on the sale of their stock in The Bernheimer Leader Stores, Inc., are includable in computing their statutory net losses for 1927, either as losses incurred in their regular business as dealers in securities, or in their regular business as owners and operators of a department store.

We are of the opinion that neither of these contentions is supported by the facts in these proceedings. Even if it be conceded that the petitioners were both established dealers in securities to such an extent that their trading in securities constituted a regular business carried on by them, it would have to be held that the transactions by which they sold the shares of stock in question were not in the regular course of such business. With respect to this

stock the petitioners were in no sense traders. The stock was not of a speculative character. The history of its acquisition by the petitioners, dating back over a period of several years, clearly refutes the idea that it was held for trading or speculative purposes.

The facts here are similar to those in *Wade L. Street et al., Executors*, 26 B. T. A. 17, where we held that, where the decedent was the principal owner of the stock of a company and gave one-half of his time to the active services of the company and spent one-fourth of his time in the purchase and sale of stocks listed on the New York Stock Exchange, he did not sustain a statutory net loss when he sold all of his stockholdings in the company. In that opinion we said:

> * * * The Preserve Company stock was not an asset used in the conduct of the business of buying and selling stocks and bonds, but was an asset quite apart from that business and held for an entirely different purpose and under different circumstances. It had no relation whatever to that business. Some of the capital assets used in the conduct of that business were shares of stock similar to the Preserve Company stock, but there the similarity ends. Under such circumstances we hold that the loss did not result from the operation of a business of buying and selling securities regularly carried on by the decedent.

See also *Dalton v. Bowers*, 56 Fed. (2d) 16, and cases therein cited.

The purpose and scope of the net loss provisions of the statute were defined in *Dalton v. Bowers, supra*, as follows:

> By the statute, allowing the deductions and carrying over the loss for two years, Congress intended to give relief to persons engaged in an established business for losses incurred during a year of depression in order to equalize taxation in the two succeeding and more profitable years. It was not intended to apply to occasional or isolated losses. Congress had made this distinction. *Anderson v. U. S.*, 48 F. (2d) 201 (C. C. A. 5); *Pabst v. Lucas*, 59 App. D. C. 154, 36 F. (2d) 614; *De Haven Mfg. Co. v. U. S.*, (D. C.) 31 F. (2d) 999. * * *

The transactions resulting in the losses here were, with respect to any business that the petitioners may have been conducting as buyers and sellers of securities, occasional or isolated transactions to which the statute was not intended to apply.

The facts of record do not bring this case within the rule of *Washburn v. Commissioner*, 51 Fed. (2d) 949, and cases therein cited, upon which the petitioners rely. The facts in the *Washburn* case were that:

> * * * The business of petitioner was not merely looking after investments or reaping the return of past labor represented thereby. He had an office with a complete organization, and gave personal attention to, and participated in, the management of these various companies and enterprises in which he had the investments, not for the purpose of conserving them merely, but of carrying them on successfully and making them profitable. To this he gave his entire time, receiving no salary, except such as might cover his ex-

penses. His work for these different enterprises was not merely sporadic, but was a continuous and regular carrying on. * * *

The court said:

* * * A party may have investments in corporate stock, have no particular occupation, and live on the return of his investments. That would not constitute business under the statute in question. He may, however, take such an active part in the management of the enterprise in which he has investments as to amount to the carrying on of a business. * * *

The facts in the instant proceedings do not show to what extent either of the petitioners actively participated in the business of The Bernheimer Leader Stores, Inc. They held the offices of president and vice president, respectively, but apparently they were not active in the business. Upon this point, petitioner Cahn testified as follows:

Q. You were a vice-president of the Bernheimer Leader Company, but you have already said that your duties were not very confining. What was the purpose of your remaining as an officer of the Bernheimer Leader Company?

A. Well, I attended the meetings; I gave some attention to matters that came up that pertained to the operation of business when they were discussed with me, but I was not active.

Petitioner Coblens testified that he accepted the position of president of The Bernheimer Leader Stores, Inc., principally on account of his connection as a dealer in securities and the advantages that this would afford in marketing the stock of the company. Instead of their holding " most of the stock " of the corporation, as was the situation in the *Washburn* case, the petitioners together held not more than 50 per cent of the stock of The Bernheimer Leader Stores, Inc. It is upon these facts, namely, that the petitioners did not consider the operation of the department store as their principal business, that the petitioners urge their claim for the net loss deduction on the grounds that the sale of the stock was a transaction in the regular course of their principal business as dealers or traders in securities.

*Clark* v. *Burnet*, 59 Fed. (2d) 1031, also is distinguishable from these proceedings upon the facts. There, as in the *Washburn* case, the court found:

* * * that during the times in question appellant was engaged in regularly carrying on the business of dredging, operated by a corporation of which appellant was principal owner and active directing head, and to which he devoted all of his time and energies. Appellant accordingly was necessarily concerned with the financial conditions and difficulties which beset the business, and he was compelled by circumstances to indorse the company's notes in order to supply it with necessary operating funds. This action was not isolated or occasional but became part of the operation of the business, and helped to carry it on. * * *

See also *Strouse* v. *Commissioner*, 59 Fed. (2d) 600, where the Circuit Court of Appeals for the Fourth Circuit, upon similar facts, affirmed the Board's ruling, 24 B. T. A. 748, that a loss sustained by a stockholder on account of his guarantee of certain operations of the corporation was not incurred in a trade or business regularly carried on by the taxpayer and was not a statutory net loss.

In these circumstances we find no error on the part of the respondent in denying the deduction of the loss sustained by the petitioners from the sale of the stock in 1927 in computing net income for 1928.

*Judgment will be entered for the respondent.*